John K. Sherwood (JS 2453)
Sheila E. Carson (SC 2820)
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

Frank H. Penski
Constance M. Boland
**NIXON PEABODY LLP**
437 Madison Avenue
New York, New York 10022
Tel: (212) 940-3000
Fax: (212) 940-3111

*Attorneys for Debtors-in-Possession and Plaintiff*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| PONDEROSA PINE ENERGY PARTNERS, LTD., ET AL.,[1] | CASE NO. 05-21444 (NLW) (JOINTLY ADMINISTERED) |
| DEBTORS. | |
| PONDEROSA PINE ENERGY PARTNERS, LTD., DEBTOR-IN-POSSESSION, PLAINTIFF, V. WILLIAMS POWER COMPANY, INC., F/K/A WILLIAMS ENERGY MARKETING & TRADING COMPANY, F/K/A WILLIAMS ENERGY DERIVATIVES & TRADING COMPANY, DEFENDANT. | ADV. PROCEEDING NO. 05-2077 (NLW) |

---

[1] The Debtors in these jointly administered Chapter 11 proceedings are: Ponderosa Pine Energy Partners, Ltd., Ponderosa Pine Energy Texas Partners, Ltd., Ponderosa Pine Energy, Inc., Ponderosa Pine Energy, L.L.C., DPC Ponderosa, L.L.C., Empeco VII-TX3, L.L.C., and IGC Brazos, L.L.C. (collectively, the "Debtors").

## DECLARATION OF SHEILA E. CARSON IN SUPPORT OF
## DEBTOR'S MOTION FOR INJUNCTIVE RELIEF AND
## CROSS-MOTION FOR SUMMARY JUDGMENT

Sheila E. Carson affirms the following under the penalties of perjury:

1. I am counsel to Lowenstein Sandler PC, attorneys for Ponderosa Pine Energy Partners, Ltd., debtor-in-possession ("Debtor") in this proceeding. I submit this declaration in further support of Debtor's cross-motion for summary judgment and motion for injunctive relief, and in further opposition to the summary judgment motion of Defendant Williams Power Company, Inc. ("Williams"), in which Williams argues that it may terminate the Gas Purchase Agreement, dated May 13, 1994 (the "GPA") between Williams and Debtor's predecessors-in-interest, Tenaska Gas Co. and Tenaska Power Partners, LP (collectively, "Tenaska") under Section 556 of the Bankruptcy Code. Through this declaration, I place the following documents before the Court.

2. Annexed to this Declaration are various documents that Debtor plans to rely on during the August 2, 2005 hearing of the parties' various motions. Included herein are the deposition transcripts of the parties, conducted to date, many deposition exhibits, and other documents produced by the parties.

3. Included as exhibits to this Declaration are a representative sample of the 1994 gas contracts produced by Williams to Debtor during discovery, (Exhibits 11 and 20), and all of the 2005 gas contracts produced by Williams. (Exhibits 34, 35, 36, 37 and 38). During discovery, the parties negotiated various agreements relating to document production in order to expedite the process and avoid objections and disputes. In resolving issues relating to Debtor's Request for the Production of Documents served on Williams, Williams agreed to produce *all* of its allegedly "forward contracts" relating to gas for the years 1993 and 1994, and all of the

executed contracts for 2005. Counsel for Williams stated that it was not producing certain 2005 gas contracts that were still being negotiated, that were finalized but not yet executed, or that were otherwise not yet in force. I reviewed Williams' document production, including all of its allegedly "forward contracts" relating to gas for the years 1994, the year that Williams and Debtor's predecessor entered into the GPA, and for 2005.

4. With respect to Williams' 1994 gas contracts, *not one* contract contains a liquidation clause. Thus, none of the Williams 1994 gas contracts affords Williams a "contractual right . . . to cause the liquidation of a . . . forward contract . . .," as Section 556 of the Bankruptcy Code requires.

5. With respect to Williams' 2005 gas contracts, each contract contains a bilateral liquidation clause. These bilateral liquidation clauses provide that, if the market price is higher than the contract price, upon liquidation, the seller, (in this case Williams), will owe money to the buyer, (in this case the Debtor), regardless of which party may have defaulted under the agreement. Applying the same bilateral liquidation clause (which is found in every one of the Williams' 2005 gas contracts) to the facts here, upon liquidation, Williams would owe Debtor, according to Williams' witnesses, between $40 million and $55 million.

6. In each of Williams 2005 gas contracts annexed as exhibits, the section of the contract containing the bilateral liquidation clause is referenced. (*See* Exhibits 34, 35, 36, 37 and 38). Williams produced three ISDA "forward" gas contracts it entered into during 2005 and the bilateral liquidation clause for these contracts is found in section 6(e). (*See* Exhibit 34.) Williams produced eleven NAESB "forward" gas contracts it entered into during 2005 and the bilateral liquidation clause for these contracts is found in section 10.3.1. (*See* Exhibit 35.) Williams produced three separate EEI "forward" gas contracts it entered into during 2005 and

N246890.1            3

the bilateral liquidation clause for these contracts is found either in section 12.2 (*see* Exhibit 36), or section 5.2. (*See* Exhibits 37 and 38.)

7. A true and correct copy of the results of a search conducted on Lexis by the Debtor's special counsel, Nixon Peabody LLP, showing all cases discussing 11 U.S.C. § 556 after January 1, 1982, as referenced in footnote 3 of Debtor's Brief in Opposition to Williams' Motion for Summary Judgment and in Support of Debtor's Cross-Motion for Summary Judgment and, in the Alternative, in Further Support of Debtor's Application for a Preliminary Injunction, dated July 20, 2005, is attached as Exhibit 1.

8. A true and correct copy of the Consent and Agreement, dated December 16, 1994, by and among Williams Energy Derivatives and Trading Company, Tenaska, and the Chase Manhattan Bank, N.A., as agent, is attached as Exhibit 2.

9. A true and correct copy of the Consent and Agreement, dated December 16, 1994, by and among The Williams Companies, Tenaska, and the Chase Manhattan Bank, N.A., as agent, is attached as Exhibit 3.

10. A true and correct copy of the July 19, 2005 deposition transcript of Phillip Wright, the Senior Vice President and General Manager of Williams Gas Pipelines, consisting of two volumes (one deposition was conducted for discovery purposes, and a second deposition was conducted for use at the August 2, 2005 hearing), is attached, without exhibits, as Exhibit 4.

11. A true and correct copy of the North American Energy Standards Board ("NAESB") standard form, "Base Contract for Sale and Purchase of Natural Gas", dated April 19, 2002, is attached as Exhibit 5.

12. A true and correct copy of an International Swaps and Derivatives Association, Inc. ("ISDA") form "Master Agreement", produced by Williams and entered into by Williams on

April 25, 2005, is attached as Exhibit 6. This is not a forward gas contract; instead, it is a master agreement used for swap transactions.

13. A true and correct copy of the Gas Purchase Agreement between Williams and Tenaska, dated May 13, 1994, is attached as Exhibit 7.

14. A true and correct copy of the article "Overview of the New NAESB Base Contract for Purchase and Sale of Natural Gas and Canadian Addendum," dated November 14, 2002 and authored by James M. Costan, cited in Debtor's July 20, 2005 Brief, is attached as Exhibit 8.

15. A true and correct copy of the deposition transcript of Williams' employee Kevin Vann, Director of Enterprise Risk Management for Williams Energy Services Company, dated July 18, 2005, is attached, without exhibits, as Exhibit 9.

16. A true and correct copy of an Edison Electric Institute ("EEI") form "Master Power Purchase & Sale Agreement", entered into by Williams on January 12, 2005, is attached as Exhibit 10. The bilateral liquidation clause in this contract may be found in Section 5.3.

17. A true and correct copy of a "Base Natural Gas Sales Contract", entered into by Williams on September 1, 1994, is attached as Exhibit 11. This contract contains no liquidation clause.

18. A true and correct copy of the Expert Report of John J. Reed on Behalf of Ponderosa Pine Energy Partners, Ltd. and Appendices A-F, dated July 22, 2005, is attached as Exhibit 12.

19. A true and correct copy of the Supplement to the Expert Report of John J. Reed on Behalf of Ponderosa Pine Energy Partners, Ltd. and Appendix G, dated July 27, 2005, is attached as Exhibit 13.

20. A true and correct copy of the deposition transcript of John J. Reed, dated July 28, 2005, without exhibits, is attached as Exhibit 14.

21. A true and correct copy of the deposition transcript of Michael Mazowita, the Director of Asset Management at Delta Power Company (which is the ultimate parent of Debtor), containing a separate volume for portions marked confidential and dated July 19, 2005, is attached without exhibits as Exhibit 15.

22. A true and correct copy of the deposition transcript of Richard Vicens, the Vice President of Debtor, dated July 18, 2005, is attached without exhibits as Exhibit 16.

23. True and correct copies of excerpts from the online glossary of the Commodity Futures Trading Commission ("CFTC") website, containing definitions for "liquidation", "closing-out", and "offset", and from the online glossary of the New York Mercantile Exchange ("NYMEX") website, containing the definition for "liquidation", are attached as Exhibit 17.

24. A true and correct copy of the deposition of Andrew Sunderman, Vice President, Treasurer and Controller for Williams, dated July 18, 2005, is attached as Exhibit 18.

25. A true and correct reduced-size copy of the Debtor's demonstrative exhibit to be used at the August 2, 2005 hearing is attached as Exhibit 19.

26. A true and correct copy of a "Base Natural Gas Sales Contract", entered into by Williams on March 1, 1994, is attached as Exhibit 20. This contract contains no liquidation clause.

27. A true and correct copy of an "MTM Position Forward Detail" produced by Williams and dated March 27, 1997 is attached as Exhibit 21.

28. A true and correct copy of a Deal Ticket produced by Williams and dated May 13, 1994 is attached as Exhibit 22.

29. A true and correct copy of a Cashbook produced by Williams is attached as Exhibit 23.

30. A true and correct copy of a letter from Kristi DeMaiolo of Tenaska to Philip Chesson of Williams, dated August 13, 1999, is attached as Exhibit 24.

31. A true and correct copy of a financial spreadsheet produced by Williams is attached as Exhibit 25.

32. A true and correct copy of a financial spreadsheet entitled "Tenaska Forward Cash Flow", dated August 16, 1999 and produced by Williams, is attached as Exhibit 26.

33. A true and correct copy of an "MTM Position Forward Detail", produced by Williams and dated June 16, 1999, is attached as Exhibit 27.

34. A true and correct copy of a NAESB form "Base Contract for Sale and Purchase of Natural Gas" entered into by Williams on April 1, 2005 is attached as Exhibit 28. The bilateral liquidation clause in this contract is found in section 10.3.1.

35. A true and correct copy of an EEI form "Master Power Purchase & Sale Agreement" entered into by Williams on January 12, 2005 is attached as Exhibit 29. The bilateral liquidation clause in this contract is found in Section 5.3.

36. A true and correct copy of an agreement regarding various swap transactions entered into by Williams and executed by former Williams' employee Bruce A. Sukaly on June 18, 1993 is attached as Exhibit 30.

37. A true and correct copy of an ISDA form "Master Agreement", entered into by Williams on February 7, 2005, is attached as Exhibit 31.

38. A true and correct copy of an agenda with notes for the "Tulsa Williams Energy Meeting" on July 14, 1994, during which representatives of Tenaska and Williams negotiated the

terms of the GPA, is attached as Exhibit 32. In these notes, which were produced by Tenaska to Debtor and then produced by Debtor to Williams, a Tenaska employee writes that the Williams GPA, the Power Purchase Agreement between Debtor and Brazos Electric Power Cooperative, Inc. and the Consent and Agreement were all part of the project finance structure of Debtor's facility and as part of the secured assets that would be offered to the lender, the termination provisions of these three types of contracts had to be linked. (*See* pages 10 and 11 of Exhibit 32.)

39. A true and correct copy of the NAESB "2005 Board Terms – Wholesale Gas Quadrant", dated June 28, 2005, demonstrating that Williams Gas Pipeline is a member of NAESB and that one of its employees, Mr. Ron Mucci, is a member of the Pipeline Segment of the Wholesale Gas Quadrant Board, is attached as Exhibit 33.

40. True and correct copies of three ISDA "Master Agreements" entered into by Williams during 2005 and produced by Williams in this proceeding, each of which contains a bilateral liquidation provision at Section 6(e), are attached as Exhibit 34.

41. True and correct copies of all eleven NAESB "Base Contract for Sale and Purchase of Natural Gas" agreements entered into by Williams during 2005 and produced by Williams in this proceeding, each of which contains a bilateral liquidation provision at Section 10.3.1, are attached as Exhibit 35.

42. A true and correct copy of an EEI and National Energy Marketers Association ("NEMA") form "Gas Sale and Purchase Agreement", entered into by Williams on January 21, 2005 and containing a bilateral liquidation provision in Section 12.2, is attached as Exhibit 36.

43.     A true and correct copy of an EEI and NEMA form "Master Power Purchase and Sale Agreement", entered into by Williams on May 27, 2005 and containing a bilateral liquidation provision at Section 5.2, is attached as Exhibit 37.

44.     A true and correct copy of an EEI and NEMA form "Master Power Purchase and Sale Agreement", entered into by Williams on July 1, 2005 and containing a bilateral liquidation provision at Section 5.2, is attached as Exhibit 38.

Dated: July 29, 2005

*Sheila Carson*
SHEILA E. CARSON